# IN THE UNITED STATES DISTRICT COURT
# DISTRICT OF GUAM

**CITADEL T. SABLAN,**

Plaintiff,

vs.

**A.B. WON PAT INTERNATIONAL AIRPORT AUTHORITY, GUAM,**

Defendant.

Civil Case No. 10-00013

**OPINION AND ORDER RE: MOTION TO DISMISS FIRST AMENDED COMPLAINT**

Before the court is the "Motion to Dismiss Plaintiff's First Amended Complaint" filed by Defendant A.B WON PAT INTERNATIONAL AIRPORT AUTHORITY, GUAM. *See* Docket No. 22. For the reasons given below, the court hereby **GRANTS** that motion in its entirety.

## I. BACKGROUND

The facts in this case are as follows.[1] Plaintiff CITADEL T. SABLAN is an employee of Defendant A.B. WON PAT INTERNATIONAL AIRPORT AUTHORITY, GUAM ("the Defendant"). *See* Docket No. 21 ("the First Amended Complaint") at ¶4. The first amended complaint indicates that Plaintiff is employed in the capacity as Police Officer I. *Id.*, at ¶ 11. She has held that position since 2002. *Id.*

On December 13, 2008, someone asked Plaintiff to help an Airport police officer transport a male arrestee. *See* Docket No. 21 at ¶15. Some time later, a supervisor in the Airport police,

---

[1] This statement of facts is based on the first amended complaint. *See* Docket No. 21. On a motion to dismiss, the court must take as true all factual allegations underlying or contained in the claims under attack. *See Ashcroft v. Iqbal*, 556 U.S. ___, 129 S. Ct. 1937, 1949 (2009). To the extent practicable, the facts set forth herein are adopted from the court's prior order of December 9, 2010 (Docket No. 15).

Airport Police Officer II Manual Tiong ("Officer Tiong") told Plaintiff that she could not carry out this duty because she is female. *See id*. at ¶16.

Plaintiff complained of this action to the Equal Employment Opportunity Commission ("EEOC"). *See* Docket No. 21 at ¶¶6-8; *see also* Docket No. 1, Exh. 1. The EEOC "determined that there is reasonable cause to believe that [Plaintiff] was denied terms & [*sic*] conditions of employment because she is female." *See id*., Exh. 1. The EEOC also invited the parties to engage in "conciliation discussions." *See id*. However, these discussions either did not take place or bore no fruit, because the Department of Justice later authorized Plaintiff to file a lawsuit to vindicate her claims. *See id*., Exh. 2. Plaintiff did so on June 7, 2010. *See generally* Docket No. 1.

On July 6, 2010, Defendant moved to dismiss the Complaint. *See* Docket No. 3 ("the Motion"); *see also* Docket Nos. 4, 5 (related materials). On August 2, 2010, Plaintiff opposed the Motion. *See* Docket No. 9. Defendant replied in support of its Motion on August 16, 2010. *See* Docket No. 10. On December 9, 2010, the court granted the motion in its entirety but granted leave to amend. *See* Docket No. 15.

On February 14, 2011, Plaintiff filed her first amended complaint. *See* Docket No. 21. On February 28, 2011, the Defendant moved to dismiss the first amended complaint. *See* Docket No. 22. On March 22, 2011, Plaintiff opposed the Motion. *See* Docket No. 29. On March 29, 2011, the Defendant filed its Reply. *See* Docket No. 30. The motion is now before the court.

**II.    JURISDICTION AND VENUE**

The claims are within the court's federal question jurisdiction. *See* 28 U.S.C. § 1331; *cf*. 42 U.S.C. § 2000e-5(f)(3). Venue is proper in this judicial district, the District of Guam, because Defendant resides here and because a substantial part of the events or omissions giving rise to the claim occurred here. *See* 28 U.S.C. § 1391(b)(1), -(2); *cf*. 42 U.S.C. § 2000e-5(f)(3).

**III.   APPLICABLE STANDARDS**

A pleading that states a claim for relief must contain, among other things, "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a defendant to raise by motion the defense that the complaint "fail[s] to state a claim upon which relief can be granted." FED. R. CIV. P.

1  12(b)(6).

Although a complaint does not need "detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  And although the court "must take all of the factual allegations in the complaint as true, [the court is] not bound to accept as true a legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal,* 556 U.S. ___, 129 S. Ct. 1937, 1949-50 (2009) (quoting *Twombly*, 550 U.S. at 555).  So, "to survive a 12(b)(6) motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570)).

*Iqbal* suggests a two-step process for determining whether a motion to dismiss should be granted.  The first step is to "identif[y] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal,* 129 S. Ct. at 1950.  These are to be discarded. *See id*.  After discarding those unsupported legal conclusions, the second step is to take any remaining well-pleaded factual allegations, "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*.

As for the meaning of the term "plausibly," "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949.  This standard

> is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of "entitlement to relief."

*Iqbal,* 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 557).  Application of this standard is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 1950.  And this standard applies to "all civil actions"—"antitrust and discrimination suits alike." *Id*. at 1953.

In short, "a complaint may survive a motion to dismiss only if, taking all well-pleaded factual allegations as true, it contains enough facts to 'state a claim to relief that is plausible on its face.'"

*Hebbe v. Pliler*, 627 F.3d 338, 341-42 (9th Cir. 2010) (quoting *Iqbal*, 129 S. Ct. at 1949).

**IV.     DISCUSSION**

This is an action arising under Title VII of the Civil Rights Act of 1964 ("Title VII"). Title VII prohibits discrimination based on race, color, religion, sex, or national origin by an "employer." 42 U.S.C. § 2000e-2. *See* Docket No. 21 at ¶1.

Title VII makes it illegal for an employer:

> (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or
>
> (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

42 U.S.C. § 2000e-2(a)(1), -(2).

"A plaintiff may show violations of Title VII by proving disparate treatment or disparate impact, or by proving the existence of a hostile work environment." *Sischo-Nownejad v. Merced Community College Dist.*, 934 F.2d 1104, 1109 (9th Cir. 1991), *superseded by statute on other grounds as recognized in Dominguez-Curry v. Nevada Transp. Dep't.*, 424 F.3d 1027, 1041 (9th Cir. 2005). Disparate treatment claims focus on intent while disparate impact claims concentrate on effect. *Watson v. Fort Worth Bank and Trust*, 487 U.S. 977, 1002 (1988).

Thus, under the statutory scheme, there are three sub-theories on which Plaintiff could proceed: (1) disparate treatment; (2) disparate impact; and (3) hostile work environment. Each of the three sub-theories has a set of elements that establish a *prima facie* case which are discussed more fully below. In 2002, the Supreme Court held that an employment discrimination plaintiff—proceeding under Title VII—need *not* plead a *prima facie* case in order to survive a Rule 12(b)(6) motion to dismiss. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511-512 (2002).

**A. Disparate Treatment Theory**

A plaintiff alleging employment discrimination may prove intentional discrimination directly or indirectly. For those instances, where a case is brought under an indirect analysis, the Supreme

Court has set forth a burden-shifting scheme. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973). Under the *McDonnell Douglas* framework, the plaintiff bears the initial burden of presenting a *prima facie* case of discrimination. A plaintiff needs to show that 1) she belongs to a protected class; 2) that she was qualified for the position; 3) that she was subject to an adverse action; and 4) that other similarly situated individuals outside the protected class were treated more favorably. *Id.* at 802; *Chuang v. Univ. of Cal. Davis, Bd. of Trs.,* 225 F.3d 1115, 1123 (9th Cir. 2000). If plaintiff establishes a *prima facie* case, the burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for its employment action. *Id.*

As this court noted previously, a plaintiff need not satisfy all elements of a *prima facie* case to survive a motion to dismiss. *See Swierkiewicz*, 534 U.S. at 510-11. However, courts do consider the *prima facie* framework to determine whether plaintiffs have made allegations sufficient to satisfy the plausibility standard as set forth in *Twombly* and *Iqbal*.

**1. Protected Class**

Plaintiff alleges facts showing that she is a member of a protected class. See Docket No. 21 at ¶11. This element is adequately alleged.

**2. Qualification for position**

Plaintiff alleges facts suggesting that she is qualified for her position. Plaintiff alleges she began her employment as an Armed Security Guard in 2001 and was promoted a year later to the position she currently holds as a Police Officer I. Docket No. 21 at ¶11. This element is adequately alleged.

**3. Adverse employment action**

In a discrimination case, the Supreme Court has defined an adverse employment action as "hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits . . . A tangible employment action [that] inflicts direct economic harm." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761-62 (1998) (citations omitted); *see also Kortan v. California Youth Auth.*, 217 F.3d 1104, 1113 (9th Cir. 2000) (no adverse employment action where the plaintiff "was not demoted, was not stripped of work responsibilities, was not handed different or more burdensome work responsibilities, was not fired or suspended, was

1 | not denied any raises, and was not reduced in salary or in any other benefit.").

Here, Plaintiff does not allege facts showing she suffered an adverse employment action. The only action Plaintiff complains of is a single incident in which she was told she could not help transport a male arrestee because she is female. *See* Docket No. 21 at ¶¶s 15-17. While Plaintiff alleges that the transport of arrestees is performed as part of her usual duties, she does not allege that there has been a material change in terms and conditions of her employment because she is no longer allowed to perform that task. *Id.*, at ¶ 13.

In her opposition, Plaintiff asks this court to infer from the facts stated that she has been denied this task since December 13, 2008. However, the court is bound to the allegations in the complaint rather than to matters outside the scope of the pleadings. *Cooper v. Pickett*, 137 F.3d 616, 622-23 (9th Cir. 1998). As with her original complaint, Plaintiff's first amended complaint fails to address the duration of the change, if in fact, there was any change (i.e., whether her duties and responsibilities were permanently altered, or whether this was a one-time event that changed her employment status). Simply put, no tangible adverse effect on the terms, conditions or privileges of her employment have been alleged. Therefore, this element is not adequately alleged.

### 4. Favorable treatment to comparable employees outside of protected class

With regard to Plaintiff's claim that she was denied transport duties of male arrestees, Plaintiff has arguably satisfied the fourth prong of a *prima facie* claim by alleging that male officers participated in transport duties for which she was denied. In her first amended complaint she alleges that the work assignment was given to her male counterparts. *See* Docket No. 21, at ¶ 17. Nevertheless, this claim fails to support the Plaintiff's cause of action. There is no allegation that being denied transport duties had any tangible impact on her employment or impact on her male counterparts.

In sum, as to her Title VII disparate treatment claim, the only elements Plaintiff adequately alleges is her membership in a protected class and that she was qualified in her job. Although a plaintiff need not allege facts constituting all elements of a *prima facie* disparate treatment case in order to survive a motion to dismiss, the challenged complaint must still "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 129 S. Ct. at

1949-50 (quoting *Twombly*, 550 U.S. at 570). The first amended complaint fails to state a claim for relief that is plausible on its face. Accordingly, the first amended complaint is dismissed, so far as it purports to articulate a disparate treatment theory under Title VII.

**B. Disparate Impact Theory**

Claims of disparate impact "involve employment practices that are facially neutral in their treatment of different groups but that in fact fall more harshly on one group than another." *Raytheon Co. v. Hernandez*, 540 U.S. 44, 52 (2003) (quoting *Int'l Brotherhood of Teamsters v. United States*, 431 v. 324, 335-36 n.15 (1977). To make out a *prima facie* case of disparate impact, the plaintiff must identify a neutral practice or policy that has a significantly adverse impact on persons of a protected class. *Connecticut v. Teal*, 457 U.S. 440, 446, 102 S.Ct. 2525, 2530 (1981). "A plaintiff establishes a *prima facie* case of disparate impact by showing a significant disparate impact on a protected class caused by a specific, identified, employment practice or selection criterion." *Stout v. Potter*, 276 F.3d 1118, 1121 (9th Cir.2002). In a disparate impact case, "[t]he plaintiff must actually prove the discriminatory impact at issue." *Stout*, 276 F.3d at 1122 (quoting *Rose v. Wells Fargo and Co.*, 902 F2d 1417, 1421 (9th Cir. 1990).

As with her original complaint, Plaintiff makes no allegations about any facially neutral practice. Instead, her allegations concern the single incident which occurred on December 13, 2008. A single incident, however, cannot be relied upon to support a claim of disparate impact. Plaintiff has not identified one other woman, who, allegedly, has not been permitted to assist in the transport of male arrestees. She has not demonstrated (or even attempted to demonstrate) what comprises the discriminatory promotion process nor does she describe any alleged practice to permit an evaluation of its impact. The focus in a disparate impact case is usually "on statistical disparities, rather than specific incidents, and on competing explanations for those disparities." *Watson*, 487 U.S. at 987.

Plaintiff has failed to demonstrate that the reassignment of her duties on December 13, 2008 or any other employment practice, had a disparate impact on a protected group. Accordingly, the first amended complaint is hereby dismissed, so far as it purports to articulate a disparate impact theory under Title VII.

**C. Hostile Work Environment**

Title VII also prohibits an employer from "requiring people to work in a discriminatorily hostile or abusive environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993). In order to recover under a hostile work environment claim, a plaintiff must show that: (1) she was subjected to verbal or physical conduct of a sexual nature; (2) the conduct was unwelcome; and (3) the conduct was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive work environment. *Kortan*, 217 F.3d at 1110.

To state a viable hostile work environment claim under Title VII, Plaintiff must allege facts showing that her work environment was "permeated with 'discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris* 510 at 21*;* (quotations and citation omitted) *see also Meritor Sav. Bank v. Vinson*, 477 U.S. 57, 67 (1986). The working environment must be perceived both subjectively and objectively as abusive. *Manatt v. Bank of Am., NA,* 339 F.3d 792, 799 n.6 (9th Cir. 2003).

Here, the most arguably pertinent facts Plaintiff has alleged with respect to a hostile work environment claim concern the events of December 13, 2008, when she was allegedly prevented from assisting another officer with the transport of a male arrestee because she was female.

Assuming, arguendo, that this incident occurred exactly as alleged by Plaintiff in her first amended complaint, the allegations would not suffice to state a cognizable hostile work environment claim. This is because occasional or isolated incidents, unless especially severe, are insufficient to support such a claim. Rather, a plaintiff must allege facts showing a concerted and continuous pattern of harassment. *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 n.1 (1998).

The alleged reassignment of duties on December 13, 2008, was merely a single isolated incident that cannot be characterized as particularly severe nor as a concerted or continuous pattern of harassment. *See Brooks v. City of San Mateo*, 229 F.3d 917, 926 (9th Cir. 2000) (rejecting a hostile work environment claim where plaintiff alleged that she was harassed on a single occasion for a matter of minutes in a way that did not impair her ability to perform her job in the long-term).

"Conduct that is not severe or pervasive enough to create an objectively hostile or

> abusive work environment-an environment that a reasonable person would find hostile or abusive-is beyond Title VII's purview." *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 81, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998) (quoting *Harris*, 510 U.S. at 21). "[C]onduct must be extreme to amount to a change in the terms and conditions of employment," lest Title VII become nothing more than "a 'general civility code.'" *Faragher*, 524 U.S. at 788 (quoting *Oncale*, 523 U.S. at 80.) *See also Porter v. California Dept. of Corrections*, 419 F.3d 885, 893 (9th Cir.2005) (angry remarks and insults directed by co-workers at plaintiff, standing by themselves were not sufficiently severe or pervasive to support a hostile-environment claim).

*Jackson v. Bd. of Equalization, No.* Civ S 09-1387 2010 WL 3733983, *10 (E.D.Cal.,Sept. 20, 2010) (unpublished order).

Accordingly, the first amended complaint is hereby dismissed, so far as it purports to articulate a hostile work environment theory under Title VII.

## V. LEAVE TO AMEND

The court has carefully considered whether Plaintiff may be able to cure the defects noted above in a second amended complaint. In making this assessment, Plaintiff's pleadings and all briefing filed in connection with the pending motion was considered. "Valid reasons for denying leave to amend include undue delay, bad faith, prejudice, and futility." *California Architectural Bldg. Prod. v. Franciscan Ceramics*, 818 F.2d 1466, 1472 (9th Cir.1988); s*ee also Klamath-Lake Pharm. Ass'n v. Klamath Med. Serv. Bureau*, 701 F.2d 1276, 1293 (9th Cir.1983) (holding that, while leave to amend shall be freely given, the court does not have to allow futile amendments).

Here, it appears for the reasons discussed above, that leave to amend may be futile with respect to claims of hostile work environment or disparate impact. However, Plaintiff may be able to save her disparate treatment claim with additional facts pled.

Plaintiff's first amended complaint will therefore be dismissed, and she will be granted leave to file a second amended complaint. Plaintiff is cautioned that any amended complaint she may elect to file should only allege claims that are cognizable. Should Plaintiff raise additional unsupported claims, Defendant will likely file another meritorious motion to dismiss and further leave to amend may not be granted.

///

///

## VI. CONCLUSION

Based on the foregoing, the court **GRANTS** Defendant's motion to dismiss. Plaintiff may file a second amended complaint within 21 days of this Order.

**IT IS SO ORDERED**.



**/s/ Frances M. Tydingco-Gatewood**
  **Chief Judge**
**Dated: Apr 13, 2011**